170 F.3d 162
 Pens. Plan Guide (CCH) P 23951Z
Robert E. JIRAS, Individually and as a retired member of
local 798 Make-up Artist & Hairstyle International
Alliance of Theatrical Stage Employees,
Plaintiff-Appellant,
v.
The PENSION PLAN OF MAKE-UP ARTIST & HAIRSTYLISTS LOCAL 798
OF THE ALLIANCE OF THEATRICAL STAGE EMPLOYEES &
the Board of Trustees & Fiduciaries,
Defendants-Appellees.
 Docket No. 97-9467.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 30, 1998.
Decided March 04, 1999.
 
 John Haas Jiras, Water Mill, NY, for Plaintiff-Appellant.
 Frank K. Moss, New York, N.Y. (Samantha Dulaney and Denis Duffey, Spivak, Lipton, Watanabe, Spivak & Moss LLP, New York, N.Y. Of Counsel), for Defendants-Appellees.
 Before: FEINBERG, McLAUGHLIN, and LEVAL, Circuit Judges.
 LEVAL, Circuit Judge:
 
 
 1
 Plaintiff Robert E. Jiras appeals from the summary judgment entered by the United States District Court for the Southern District of New York (Andrew J. Peck, Magistrate Judge ) in favor of the defendants Pension Plan of Make-Up Artists & Hairstylists Local 798 of the Alliance of Theatrical Stage Employees and the Board of Trustees and Fiduciaries (the "Fund" of "Local 798"). See Jiras v. Pension Plan of Make-Up Artists & Hairstylists Local 798, 1997 WL 639243 (S.D.N.Y. Oct.16, 1997). Jiras alleged that the Fund failed to credit work he had performed for Local 798, and therefore underpaid his pension, in violation of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq. The district court dismissed the action for lack of subject-matter jurisdiction and, alternatively, granted summary judgment for the Fund on the merits. We find the court did have jurisdiction, but properly adjudicated the substance of Jiras's claim. Accordingly, we affirm the judgment on the merits.
 
 BACKGROUND
 
 2
 Jiras began his career as a make-up artist in the movie industry in 1945, and was a charter member of Local 798 at its founding in 1949. In 1988, he applied for his pension pursuant to the Local 798 plan, and he was awarded $268 per month. After a period of time whose length is disputed and no longer relevant, Jiras protested to the Fund, asserting that he had earned a larger benefit. The Fund informed Jiras by mail that he could not be credited for work he did prior to 1965 because he had experienced a "break in employment" in 1964 and 1965. Under the plan in effect in those years, a union member lost all prior pension credits if he failed to earn at least one quarter credit in two consecutive years. To earn a quarter credit in a year, Jiras would have had to work for at least 30 days for an employer that had a collective bargaining agreement with Local 798, and the employer would have had to make its contributions to the pension fund. The Fund asserted that in 1964 and 1965, Jiras had not spent 30 days working for an employer that paid into the fund and that he therefore could not receive credits for work prior to those years.
 
 
 3
 In October 1995, Jiras filed suit in federal district court pursuant to § 502 of ERISA, 29 U.S.C. § 1132(a).[1] Jiras claimed that the Fund had improperly denied him benefits and breached its fiduciary duties. Following discovery, both parties filed motions for summary judgment.
 
 
 4
 In his motion and supporting papers, Jiras sought to establish two grounds for relief. He first asserted that he had not suffered a break in service in 1964 and 1965. His papers purported to show that he had worked on two movies in 1964 and 1965, "Inside Daisy Clover" and "Mickey One," respectively, and that the movie producers had made pension contributions for at least 30 days each year. Jiras also sought to show that he was entitled to a total of at least 15 credits for his work prior to 1964, and should receive benefits for those years regardless whether he had experienced a break in service. In making the latter claim, Jiras sought to benefit from a provision added to the plan in 1966, and effective on November 1 of that year, under which an employee who had earned 15 years of pension credits could not "lose that credit and when reaching retirement age, [would] be entitled to a benefit whether he had continued working in covered employment or not" (the "vesting provision"). If Jiras had accumulated at least 15 credits by 1964, and if the vesting provision applied at that time, then he would not lose his pre-1964 credits even if he experienced a break in service beginning in that year.
 
 
 5
 While the motions for summary judgment were pending, the trustees of the Fund reconsidered Jiras's eligibility for benefits at a meeting on April 24, 1997. Under the terms of the plan, the trustees are the "sole judge" of an applicant's "application and interpretation" of the plan's terms and "entitlement to or amount of benefits." After reviewing Jiras's submissions, the trustees rejected Jiras's claim to have earned pension credit in 1964 and 1965. They found that although Jiras had worked on the two films in those years, the work had not been performed under Local 798 contract, and contributions for the work had not been made. The trustees noted Jiras's failure to produce any documentary evidence of union contracts or payments on either film. With regard to the 1965 film, Jiras offered no evidence at all of union contracts or payments; for the 1964 film, he relied entirely on one producer's affidavit. The trustees declined to credit this affidavit because the producer "failed to provide any supporting documentation," equivocated about key facts in his deposition, and made relevant assertions that were demonstrably wrong, such as that pension payments for studio mechanics on "Mickey One" had been made to a fund not yet in existence in 1964.
 
 
 6
 The trustees also rejected Jiras's claim that he had earned 15 credits and should benefit from the 1966 vesting provision. The trustees found that Jiras had not accumulated fifteen credits, and that even if he had done so, the 1966 vesting provision was not intended to be applied to persons who had suffered a break-in-service prior to 1966. The Fund therefore declined to adjust Jiras's pension. The Fund's findings were submitted to the district court prior to the decision granting summary judgment.
 
 
 7
 Presiding by agreement of the parties, see 28 U.S.C. § 636(c), Magistrate Judge Peck granted the Fund's motion for summary judgment. As an initial matter, he concluded that subject-matter jurisdiction under ERISA was absent because of 29 U.S.C. § 1144(b)(1), which provides that ERISA's preemption of state law "shall not apply with respect to any cause of action which arose, or any act or omission which occurred, before January 1, 1975." 29 U.S.C. § 1144(b)(1). The court noted our previous holdings that this section applies "where a denial of benefits after January 1, 1975, was merely the 'inexorable consequence' of a pre-1975 'act or omission.' " Jiras, 1997 WL 639243, at * 4 (quoting Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1189 (2d Cir.1996) (quoting Lamontagne v. Pension Plan of the United Wire, Metal & Machine Pension Fund, 869 F.2d 153, 156 (2d Cir.1989))). The court concluded that the denial of benefits in 1997 was an "inexorable consequence" of Jiras's employment history in the 1960s and the pension plans then in effect. Because § 1144(b)(1) therefore applied, the court believed, subject-matter jurisdiction was missing.
 
 
 8
 Notwithstanding this asserted absence of jurisdiction, the court understood our decision in Nowak to require a ruling on the merits. As to the applicable standard of review, the court concluded that because the Fund has discretionary authority to administer the fund, the Supreme Court's decision in Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), required review under the deferential arbitrary and capricious standard. Applying that standard, the court found that Jiras's minimal evidence supporting his claims about the 1964 and 1965 films failed to create a genuine question of material fact whether the Fund's denial of additional benefits was arbitrary and capricious. The court similarly concluded that the silence of the 1966 vesting provision as to retroactive application adequately supported the decision not to apply the provision to Jiras. The court therefore granted summary judgment for the Fund. Jiras appeals from this judgment, challenging the merits of the denial of his claim concerning the 1964 film and the implicit rejection of his claim for breach of fiduciary duty.
 
 DISCUSSION
 A. Dismissal Under § 1144(b)(1)
 
 9
 We must first decide whether 29 U.S.C. § 1144(b)(1) required dismissal of Jiras's claim, either on jurisdictional grounds or otherwise. Section 1144(b)(1) provides that the preemption provisions of ERISA "shall not apply with respect to any cause of action which arose, or any act or omission which occurred, before January 1, 1975."
 
 
 10
 As an initial matter, we believe the district court erred in characterizing dismissal under § 1144(b)(1) as jurisdictional and undertaking nonetheless to decide the merits. Failure to meet the requirements of § 1144(b)(1) requires dismissal under Rule 12(b)(6) for failure to state a claim, not for lack of jurisdiction. See Nowak, 81 F.3d at 1191. As we explained in Nowak, "the inquiry necessary to assess a claim's satisfaction of the § 1144 criteria--i.e., whether the cause of action arose or the relevant act or omission resulting in the denial of benefits occurred after January 1, 1975--is so bound up in the merits of the claim, that if a court determines that a plaintiff has failed to satisfy § 1144, dismissal should be under 12(b)(6) for failure to state a claim, rather than under 12(b)(1) [for lack of jurisdiction]." Id. Dismissal in such circumstances for failure to meet the requirements of § 1144(b)(1) reaches the merits and ends the inquiry as to liability under the provisions of ERISA.
 
 
 11
 The next question is whether dismissal for failure to satisfy the criteria of § 1144(b)(1) was proper. Under § 1144(b)(1), "ERISA is not applicable where (1) the plaintiff's asserted claim accrued, or (2) the relevant act or omission that served as the basis for the plaintiff's claim occurred, before January 1, 1975." Nowak, 81 F.3d at 1189. There is no question that Jiras's claim accrued only in 1988, when the Fund awarded him the pension that he protests. The more difficult issue is whether the relevant "act or omission" that gave rise to his claim occurred before or after January 1, 1975.
 
 
 12
 Under the "act or omission" clause of § 1144(b)(1), ERISA does not apply "where a denial of benefits after January 1, 1975 was merely the 'inexorable consequence' of a pre-1975 'act or omission.' " Nowak, 81 F.3d at 1189 (quoting Lamontagne, 869 F.2d at 156). In Nowak and Lamontagne, we found that a post-1975 denial was an inexorable consequence of pre-1975 actions. In Lamontagne, the petitioner did not dispute that he left his job in 1971, then sought benefits in 1978. See Lamontagne, 869 F.2d at 154-55. Under the terms of the pre-1975 pension plan, a break in service of at least two years required cancellation of benefits. See id. Lamontagne had been out of work for five years when he sought benefits in 1978. We concluded that § 1144(b)(1) required dismissal: "Given Lamontagne's employment history, the 1978 denial of his pension application was merely a consequence of the Fund's [pre-1975] adoption of the break in employment policy." Id. at 156.
 
 
 13
 Nowak involved a similar circumstance. We found that dismissal under § 1144(b)(1) was appropriate where petitioner "concede[d]" he suffered a break-in-service prior to 1975, it was "undisputed" that his pension had not vested prior to the break, and the "unambiguous" terms of the pension plan therefore precluded payment of benefits. See Nowak, 81 F.3d at 1186, 1192. Although the pension fund rendered a decision after 1975 in both Lamontagne and Nowak, that decision was dictated by undisputed underlying facts and pension plan provisions.
 
 
 14
 This case differs from Lamontagne and Nowak because the Fund trustees exercised their discretion after 1975 to resolve disputed factual and legal questions. Under the plan, the trustees were the "sole judge" of the interpretation of rules and the calculation of benefits. Jiras presented evidence that his work in connection with the 1964 and 1965 films justified a higher pension than he received. He also raised a serious question whether the 1966 vesting provision, which is silent as to retroactivity, should be applied retroactively to him. When the trustees met to decide Jiras's claims, their decision, unlike the decisions in Lamontagne and Nowak, was not dictated by the application of undisputed law to undisputed facts. The trustees had to weigh evidence and arguments on both sides of the claims. Given the factual and interpretive dispute, the trustees' post-1975 decision not to adjust Jiras's pension was not an "inexorable consequence" of the pre-1975 acts.
 
 
 15
 Accordingly, dismissal under § 1144(b)(1) was not appropriate.
 
 B. Jiras's Substantive Claims
 
 16
 Because ERISA does apply to the Fund's decision to set benefits at $268 per month, we must determine whether that decision was proper as a matter of substantive ERISA law. The district court concluded that denial of additional benefits was not arbitrary and capricious if ERISA applied. We agree with the district court's analysis and conclude that summary judgment was proper.
 
 
 17
 Where, as here, a pension plan confers discretion on its administrators to determine plan eligibility and benefits, we review a decision of the administrators under the arbitrary and capricious standard. See Firestone Tire, 489 U.S. at 115, 109 S.Ct. 948; Pagan v. NYNEX Pension Plan, 52 F.3d 438, 441 (2d Cir.1995). Having abandoned his attacks on the decisions as to the 1965 film or the 1966 vesting provision, Jiras submits that his affidavits as to the 1964 film were sufficient to defeat summary judgment. He argues that he created a genuine question of material fact whether contributions had been made on his behalf for the 1964 film. As the district court correctly noted, however, this argument misstates the standard of law. Because the court is not reviewing the evidence de novo, but rather reviewing the decision of the pension fund, the petitioner must establish a genuine question of material fact whether the Fund's rejection of his claims was arbitrary and capricious. We find no such question here. Jiras offered no documentation as to any collective bargaining agreement or payments for the 1964 film, and the only affidavit supporting his position was unsubstantiated and came from a witness who offered materially erroneous testimony. The Fund's decision therefore was not the kind of "clear error of judgment" that would warrant judicial reversal. See Zuckerbrod v. Phoenix Mutual Life Ins. Co., 78 F.3d 46, 49 (2d Cir.1996) (internal quotation marks and citations omitted).
 
 
 18
 We have considered Jiras's other claims and find them to be without merit.
 
 CONCLUSION
 
 19
 The judgment of the district court is affirmed.
 
 
 
 [1]
 In relevant part, Section 1132(a) provides that "[a] civil action may be brought ... (1) by a participant or beneficiary ... (B) to recover benefits due to him under the terms of his plan, [or] to enforce his rights under the terms of [the] plan ... (2) by ... a beneficiary ... for appropriate relief under section 1109 [asserting liability for breach of fiduciary duty]...."