# UNITED STATES POSTAL SERVICE *v.* FLAMINGO INDUSTRIES (USA) LTD. ET AL.

No. 02–1290.   Argued December 1, 2003—Decided February 25, 2004

KENNEDY, J., delivered the opinion for a unanimous Court.

*Deputy Solicitor General Kneedler* argued the cause for petitioner. With him on the briefs were *Solicitor General Olson, Assistant Attorney General Keisler, Lisa S. Blatt,* and *Mark B. Stern.*

*Harold J. Krent* argued the cause for respondents. With him on the brief were *Angela Wah* and *George P. Eshoo.** 

JUSTICE KENNEDY delivered the opinion of the Court.

This case requires us to consider whether the United States Postal Service is subject to liability under the federal antitrust laws.

Flamingo Industries (USA) Ltd., a private corporation, and its owner and principal officer are the respondents here. Flamingo had been making mail sacks for the Postal Service, but then its contract was terminated. The respondents sued in United States District Court alleging that the Postal Service had sought to suppress competition and create a monopoly in mail sack production. (They also brought claims against the Postal Service under federal procurement law and state law, but those claims are not before us.) The Dis-

---

*Briefs of *amici curiae* urging affirmance were filed for the American Trucking Associations, Inc., by *Drew S. Days III, Beth S. Brinkmann, Seth M. Galanter, Paul T. Friedman,* and *Robert Digges, Jr.;* for Postal-Watch, Inc., by *William S. Stancil;* and for the Washington Legal Foundation et al. by *Alan Charles Raul, Daniel J. Popeo,* and *Paul D. Kamenar.*

*Nicholas M. Fobe* filed a brief for the Center for the Advancement of Capitalism as *amicus curiae.*

trict Court dismissed the antitrust claims, concluding that the Postal Service is not subject to liability under federal antitrust law. The Court of Appeals reversed. It held that the Postal Service can be liable but that it has a limited immunity from antitrust liability for conduct undertaken at the command of Congress. 302 F. 3d 985, 993 (CA9 2002). We granted certiorari to consider the question whether the United States Postal Service is a "person" amenable to suit under the controlling antitrust statute. 538 U. S. 1056 (2003). We hold it is not subject to antitrust liability, and we reverse.

After the Revolution, both the Articles of Confederation and the Constitution explicitly empowered the National Government to provide and regulate postal services. Article of Confederation IX; U. S. Const., Art. I, §8. The importance of the enterprise was prefigured by the Continental Congress' appointment of Benjamin Franklin to be the first Postmaster General, on July 26, 1775. G. Cullinan, The United States Postal Service 26 (1973) (hereinafter Cullinan). From those beginnings, the Postal Service has become "the nation's oldest and largest public business." J. Tierney, Postal Reorganization: Managing the Public's Business vii (1981) (hereinafter Tierney).

During its history since Postmaster Franklin, the postal organization has been reorganized or restructured at various times. In the immediate period after ratification of the Constitution, it was called the General Post Office and was subordinate to the Treasury Department. Cullinan 35–36. In 1825, its name changed from the General Post Office to the Post Office Department, an alteration accomplished by somewhat informal means when Postmaster Joseph McLean simply changed the title on official letterhead. McLean also began the practice of reporting directly to the President rather than to the Secretary of the Treasury. *Id.*, at 50–51. (McLean was a popular Postmaster who served from 1823 until 1829, when the incoming President Andrew Jackson

solved his worries about McLean's independence in matters of postal governance, especially patronage, by appointing him to this Court. *Id.*, at 52.) In 1829, President Jackson acknowledged the enhanced status of the Postmaster General by making him a member of the Cabinet, though it was not until 1872 that Congress formally recognized the Post Office Department as an executive department of the Federal Government. *Id.*, at 36. A more complete account of the origins and mission of the postal system is set forth in *Postal Service v. Council of Greenburgh Civic Assns.*, 453 U. S. 114, 120–126 (1981).

Major change came with the Postal Reorganization Act of 1970 (PRA), 39 U. S. C. § 101 *et seq.* It was adopted to increase the efficiency of the Postal Service and reduce political influences on its operations. Tierney 1–26; Cullinan 5–10. The PRA renames the Post Office Department the United States Postal Service and removes it from the Cabinet to make it "an independent establishment of the executive branch of the Government of the United States." 39 U. S. C. § 201. Superintendence over the new Postal Service is the responsibility of a Board of Governors, consisting of 11 members. § 202. Nine governors are appointed by the President with the advice and consent of the Senate and are removable only for cause. *Ibid.* The other two governors are the Postmaster General, who also serves as the chief executive officer of the Postal Service, and who is appointed by the other nine, and the Deputy Postmaster General, who is appointed by the other nine together with the Postmaster General. *Ibid.*

The PRA creates a second independent establishment, the Postal Rate Commission, to make recommendations on postal rate changes. § 3601. The Commission advises the Board of Governors on rates for all postal services, including both letter carriage and parcel delivery. § 3621. Rates are set by the Board of Governors based on the recommendations of the Commission, and those decisions are in certain

circumstances subject to judicial review. §§ 3625, 3628. In making rate recommendations the Commission must consider factors including making each class of mail bear the costs attributable to it, and the effect of rate increases on the mail-using public and on competitors in the parcel delivery business. § 3622(b).

Under the PRA, the Postal Service retains its monopoly over the carriage of letters, and the power to authorize postal inspectors to search for, seize, and forfeit mail matter transported in violation of the monopoly. See §§ 601–606. It also retains the obligation to provide universal service to all parts of the country. §§ 101, 403. The Postal Service has the power of eminent domain, the power to make postal regulations, and the power to enter international postal agreements subject to the supervision of the Secretary of State. §§ 401, 407. It has, in addition, powers to contract, to acquire property, and to settle claims. § 401. As this brief summary indicates, the Postal Service has significant governmental powers, consistent with its status as an independent establishment of the Executive Branch. It was exempted from many, though not all, statutes governing federal agencies, and specifically subjected to some others. §§ 409–410. With respect to antitrust liability, however, the PRA neither exempts the Postal Service nor subjects it to liability by express mention. It is silent on the point.

The PRA waives the immunity of the Postal Service from suit by giving it the power "to sue and be sued in its official name." § 401. The first question we address is whether that waiver suffices by its own terms to subject the Postal Service to liability under the Sherman Act, ch. 647, 26 Stat. 209, as amended, 15 U. S. C. § 1 *et seq.* We begin with a discussion of our precedents bearing on the inquiry.

This Court has held that when Congress passes enabling legislation allowing an agency or other entity of the Federal Government to be sued the waiver should be given a liberal—that is to say, expansive—construction. *Federal*

*Housing Administration* v. *Burr*, 309 U. S. 242 (1940). In support of its holding in *Burr* the Court, in a passage often cited in later cases involving the waiver of sovereign immunity, wrote as follows:

> "[I]t must be presumed that when Congress launched a governmental agency into the commercial world and endowed it with authority to 'sue or be sued,' that agency is not less amenable to judicial process than a private enterprise under like circumstances would be." *Id.*, at 245.

This general proposition was cited in the first two cases in which the Court considered the extent of the waiver effected by the sue-and-be-sued clause of the PRA. In *Franchise Tax Bd. of Cal.* v. *Postal Service*, 467 U. S. 512 (1984), the underlying dispute concerned the obligation of the Postal Service to withhold unpaid state taxes from the wages of its employees. A unanimous Court held that the Postal Service was required to respond to an order to withhold the amounts, even though the process was a state administrative tax levy, not an order issued by a state court. *Id.*, at 525. The sue-and-be-sued clause, the Court held, must be given broad effect, and the Postal Service was required to respond to the administrative order even though it had not been issued by a judicial body. *Id.*, at 519–521.

The second case in which the Court considered the scope of the waiver effected by the PRA's sue-and-be-sued clause was *Loeffler* v. *Frank*, 486 U. S. 549 (1988). After the Postal Service had been found liable for damages from employment discrimination in an action brought under Title VII of the Civil Rights Act of 1964, the question arose whether it was subject as well to prejudgment interest. *Id.*, at 551. The Court allowed the interest, and in the course of its decision asserted, or repeated, formulations which indicate that the sue-and-be-sued clause effects a broad waiver of immunity.

*Id.*, at 554–555. The Court also relied, however, upon the provisions of Title VII itself which, by specific amendment, extended the coverage under the Civil Rights Act to federal employees. *Id.*, at 558–561.

After *Loeffler*, this Court decided *FDIC* v. *Meyer*, 510 U. S. 471, 484 (1994). In *Meyer*, the question was whether the Federal Savings and Loan Insurance Corporation (FSLIC), an agency of the United States, could be held liable in a so-called *"Bivens* action." See *Bivens* v. *Six Unknown Fed. Narcotics Agents*, 403 U. S. 388 (1971). A federal statute provided for a waiver of sovereign immunity in suits against the FSLIC, but the Court explained that the interpretation of the waiver statute was just the initial part of a two-part inquiry. Even though sovereign immunity had been waived, there was the further, separate question whether the agency was subject to the substantive liability recognized in *Bivens. Meyer, supra*, at 483. The *Loeffler* Court had not set forth the two-step analysis in the explicit terms *Meyer* used, but it did, as we have said, consult the statute as the source of the liability upon which the obligation to pay prejudgment interest depended.

The two-step analysis in *Meyer* applies here. We ask first whether there is a waiver of sovereign immunity for actions against the Postal Service. If there is, we ask the second question, which is whether the substantive prohibitions of the Sherman Act apply to an independent establishment of the Executive Branch of the United States.

When the Court of Appeals considered the instant case, it cited *Meyer* and seemed at the outset to follow *Meyer*'s two-step analysis. In our view, however, the ensuing discussion in the Court of Appeals' opinion was not consistent with the *Meyer* framework; for, having found that the Postal Service's immunity from suit is waived to the extent provided by the statutory sue-and-be-sued clause, the Court of Appeals relied on the same waiver to conclude that the Sherman

Act applies to the Postal Service. This conflated the two steps and resulted in an erroneous conclusion. See *Meyer, supra,* at 484.

As to the first step, as an "independent establishment of the executive branch of the Government of the United States," 39 U. S. C. § 201, the Postal Service is part of the Government and that status indicates immunity unless there is a waiver. The sue-and-be-sued clause waives immunity, and makes the Postal Service amenable to suit, as well as to the incidents of judicial process. § 401. See *Meyer, supra,* at 482; *Loeffler, supra,* at 565; *Franchise Tax Bd., supra,* at 525. While Congress waived the immunity of the Postal Service, Congress did not strip it of its governmental status. The distinction is important. An absence of immunity does not result in liability if the substantive law in question is not intended to reach the federal entity. So we proceed to *Meyer*'s second step to determine if the substantive antitrust liability defined by the statute extends to the Postal Service. Under *Meyer*'s second step, we must look to the statute.

Some years before *Meyer* was decided, the Court of Appeals for the District of Columbia Circuit recognized the two distinct inquiries required when the question is whether the Government, or an entity it owns, is named as a defendant in a suit under the antitrust laws. *Sea-Land Serv., Inc.* v. *Alaska R. Co.,* 659 F. 2d 243, 245 (1981) (R. Ginsburg, J.). That is the correct approach. Upon examining the Sherman Act, our decisions interpreting it, and the statutes that create and organize the Postal Service, we conclude that the Postal Service is not subject to antitrust liability.

The Sherman Act imposes liability on any "person." It defines the word. It provides that "'person' . . . shall be deemed to include corporations and associations existing under or authorized by the laws of either the United States [or of States or foreign governments]." 15 U. S. C. § 7. It follows then, that corporate or governmental status in most instances is not a bar to the imposition of liability on an en-

tity as a "person" under the Act. The federal prohibition, for instance, binds state governmental bodies. See *Georgia v. Evans*, 316 U. S. 159 (1942); see also *Pfizer Inc.* v. *Government of India*, 434 U. S. 308 (1978).

It is otherwise, however, when liability is pursued against the Federal Government. The Court made this proposition clear in *United States* v. *Cooper Corp.*, 312 U. S. 600, 614 (1941). The question in *Cooper* was whether, under the Sherman Act, the United States was a person who could bring a treble-damages claim for its own alleged antitrust injury. The Court held the United States could not sue for antitrust damages because it is not a person under the antitrust statute. *Id.*, at 606–607. Important to the present case is an explicit reason given by the *Cooper* Court for reaching its decision. The Court observed that if the definition of "person" included the United States, then the Government would be exposed to liability as an antitrust defendant, a result Congress could not have intended. *Id.*, at 607, 609.

After *Cooper*, Congress amended the antitrust statutes to allow the United States to bring antitrust suits. For our purposes, the means by which it did so is instructive. Congress did not change the definition of "person" in the statute, but added a new section allowing the United States to sue. See 15 U. S. C. § 15a. So, *Cooper*'s conclusion that the United States is not an antitrust "person," in particular not a person who can be an antitrust defendant, was unaltered by Congress' action; indeed, the means Congress used to amend the antitrust law implicitly ratified *Cooper*'s conclusion that the United States is not a proper antitrust defendant. See 312 U. S., at 609; *Sea-Land, supra,* at 245 ("Although Congress was well aware of the view the Court indicated in *Cooper Corp.*, that Congress had not described the United States as a 'person' for Sherman Act purposes, Congress addressed only the direct holding in that case—the ruling that the United States was not authorized to proceed

as a Sherman Act treble damage action plaintiff" (footnote omitted)).

The remaining question, then, is whether for purposes of the antitrust laws the Postal Service is a person separate from the United States itself. It is not. The statutory designation of the Postal Service as an "independent establishment of the executive branch of the Government of the United States" is not consistent with the idea that it is an entity existing outside the Government. The statutory instruction that the Postal Service is an establishment "of the executive branch of the Government of the United States" indicates just the contrary. The PRA gives the Postal Service a high degree of independence from other offices of the Government, but it remains part of the Government. The Sherman Act defines "person" to include corporations, and had the Congress chosen to create the Postal Service as a federal corporation, we would have to ask whether the Sherman Act's definition extends to the federal entity under this part of the definitional text. Congress, however, declined to create the Postal Service as a Government corporation, opting instead for an independent establishment. The choice of words likely was more informed than unconsidered, because Congress debated proposals to make the Postal Service a Government corporation before it enacted the PRA. See H. R. Rep. No. 91–1104, p. 6 (1970).

As we have noted, the PRA refers in explicit terms to various federal statutes and specifies that the Postal Service is exempt from some and subject to others. 39 U. S. C. §§ 409–410. It makes no mention of the Sherman Act or the antitrust laws, however. The silence leads to no helpful inference one way or the other on the issue before us; but the other considerations we have discussed lead us to say that absent an express statement from Congress that the Postal Service can be sued for antitrust violations despite its status as an independent establishment of the Government of the

United States, the PRA does not subject the Postal Service to antitrust liability.

Our conclusion is consistent with the nationwide, public responsibilities of the Postal Service. The Postal Service has different goals, obligations, and powers from private corporations. Its goals are not those of private enterprise. The most important difference is that it does not seek profits, but only to break even, 39 U. S. C. § 3621, which is consistent with its public character. It also has broader obligations, including the provision of universal mail delivery, the provision of free mail delivery to certain classes of persons, §§ 3201–3405, and, most recently, increased public responsibilities related to national security. Finally, the Postal Service has many powers more characteristic of Government than of private enterprise, including its state-conferred monopoly on mail delivery, the power of eminent domain, and the power to conclude international postal agreements.

On the other hand, but in ways still relevant to the nonapplicability of the antitrust laws to the Postal Service, its powers are more limited than those of private businesses. It lacks the prototypical means of engaging in anticompetitive behavior: the power to set prices. This is true both as a matter of mechanics, because pricing decisions are made with the participation of the separate Postal Rate Commission, and as a matter of substance, because price decisions are governed by principles other than profitability. See *supra*, at 740–741. Similarly, before it can close a post office, it must provide written reasons, and its decision is subject to reversal by the Commission for arbitrariness, abuse of discretion, failure to follow procedures, or lack of evidence. § 404. The Postal Service's public characteristics and responsibilities indicate it should be treated under the antitrust laws as part of the Government of the United States, not a market participant separate from it.

The Postal Service does operate nonpostal lines of business, for which it is free to set prices independent of the

Commission, and in which it may seek profits to offset losses
in the postal business. § 403(a). The great majority of the
organization's business, however, consists of postal services.
See Revenue, Pieces, and Weight by Classes of Mail and Spe-
cial Services for Government Fiscal Year 2003, available
at http://www.usps.com/financials/_pdf/GFY03.pdf (as visited
Jan. 23, 2004, and available in Clerk of Court's case file).
Further, the Postal Service's predecessor, the Post Office
Department, had nonpostal lines of business, such as money
orders and postal savings accounts. Cullinan 84–85, 107.
As a Cabinet agency, the old Post Office Department was not
subject to the antitrust laws. The new Postal Service's lines
of business beyond the scope of its mail monopoly and univer-
sal service obligation do not show it is separate from the
Government under the antitrust laws.

* * *

The Postal Service, in both form and function, is not a
separate antitrust person from the United States. It is part
of the Government of the United States and so is not con-
trolled by the antitrust laws. The judgment of the Court of
Appeals is reversed.

*It is so ordered.*