**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MB FINANCIAL GROUP, INC., a
Delaware Corporation doing
business as Union Affiliates
Mortgage Company,
            *Plaintiff-Appellant,*

            v.

UNITED STATES POSTAL SERVICE;
UNITED STATES OF AMERICA,
            *Defendants-Appellees.*

No. 06-56267

D.C. No.
CV-06-00266-DMS

OPINION

Appeal from the United States District Court
for the Southern District of California
Dana M. Sabraw, District Judge, Presiding

Argued and Submitted
March 4, 2008—Pasadena, California

Filed September 25, 2008

Before: Mary M. Schroeder, Kim McLane Wardlaw and
Richard C. Tallman, Circuit Judges.

Opinion by Judge Schroeder;
Dissent by Judge Tallman

13761

## COUNSEL

Steven S. Kane, San Diego, California, for the plaintiff-appellant.

Ray E. Donahue, Washington, D.C., for the defendants-appellees.

## OPINION

SCHROEDER, Circuit Judge:

This is an unusual case involving the potential liability of the United States Postal Service ("USPS") for failing to make available a post office box it was obligated to provide for receipt of plaintiff's business mail. The district court dismissed the complaint pursuant to Federal Rule of Civil Procedure 12 for lack of jurisdiction and failure to state a claim,

holding that the USPS was immune under the provision of the Federal Tort Claims Act ("FTCA") that exempts the USPS from liability arising from negligently transmitted mail. *See* 28 U.S.C. § 2680(b).

We reverse. The complaint alleges a tort that does not necessarily arise out of the negligent transmission of mail. The complaint also alleges a facially viable breach of contract claim. The dismissal of the action at this preliminary stage, before any discovery could reveal either the USPS records of the transaction or the true nature of the parties' understanding, was erroneous.

## I.   Background

MB Financial Group, Inc. ("MB Financial") sells mail order mortgage loans to members of labor unions in the San Diego area. Its business depends on receiving mailed-in responses to its solicitations. It rented a post office box in a USPS branch office in San Diego and paid for six months of usage. The USPS, admittedly through its own fault, did not make the box available for the full six months. MB Financial alleges that, as a result, it lost hundreds of thousands of dollars worth of business.

MB Financial, according to its complaint, rented the box on June 30, 2004, and paid fifty dollars as a six month rental fee. Some time later that year, one of its representatives contacted the USPS branch office to complain about not receiving mail. In a letter dated January 3, 2005, which was attached to the complaint, the USPS apologized and acknowledged that it "may have been at fault" for the "premature closure of [the] PO Box" due to "improper handling of fees."

MB Financial filed this action against the USPS and the United States in federal district court in April 2006, alleging two claims for relief. The first was a negligence claim under the FTCA, 28 U.S.C. § 2671 *et seq.*, alleging that the USPS

negligently denied MB Financial use of the post office box for which MB Financial had paid rental fees. The second was a claim for breach of contract, alleging that the USPS failed to credit MB Financial's payment, and wrongfully failed to make the box available for plaintiff's use. The complaint prayed for damages of $263,092.05, representing the alleged profits lost as a result of MB Financial's not receiving responses to its direct mail solicitations of prospective customers.

The defendants moved to dismiss the action and the district court granted the motion. The district court held that § 2680(b) barred relief on the tort claim on the ground that it was essentially a claim for negligent mail transmission. The court said, quoting the complaint, that the essence of Plaintiff's claim is that it did not receive its mailed-in responses to its direct mail solicitations due to the defendants' negligence. The district court held that § 2680(b) barred relief on the breach of contract claim as well because it was "based on the same facts as [the] negligence claim." As an alternative ground, the district court held that the Postal Reorganization Act of 1971 ("PRA"), 39 U.S.C. § 401(1), did not provide subject matter jurisdiction over the contract claim. Specifically, the Act's "sue and be sued" clause did not provide any "substantive basis for a claim against the Postal Service." Because the district court dismissed the action on the pleadings, the parties never engaged in any discovery. This appeal followed.

## II.   Statutory Background

Since its founding, the Postal Service has been reorganized at various times. *U.S. Postal Serv. v. Flamingo Indus. (USA) Ltd.*, 540 U.S. 736, 739-40 (2004). In 1970 Congress passed the PRA, which created the structure of the modern postal service. *Id.* The PRA makes the USPS an "independent establishment of the executive branch of the Government of the United States." 39 U.S.C. § 201. As such, the USPS enjoys

sovereign immunity absent a waiver. *Flamingo Indus.*, 540 U.S. at 744.

**[1]** Congress has provided for such a waiver. The PRA waives the immunity of the USPS by giving it the power "to sue and be sued in its official name." 39 U.S.C. § 401(1); *see also Flamingo Indus.*, 540 U.S. at 741. The PRA also provides that the FTCA "shall apply to tort claims arising out of the activities of the Postal Service." 39 U.S.C. § 409(c). The FTCA, in turn, provides a general waiver of sovereign immunity subject to specific exceptions. The FTCA gives federal courts exclusive jurisdiction to hear

> civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

**[2]** The FTCA, in § 2680, qualifies this broad waiver by retaining sovereign immunity for thirteen categories of claims. One of those categories, described in § 2680(b), pertains to the operations of the USPS and is at issue in this suit. Section 2680(b) provides that the waiver of sovereign immunity in § 1346(b) "shall not apply to . . . [a]ny claim arising out of the loss, miscarriage, or negligent transmission of letters or postal matter." The issue here is thus whether wrongful failure to provide a box at the Post Office arises out of the "negligent transmission" of the mail.

### III.  Analysis

#### A.  The Tort Claim

The district court held that the USPS liability exception for negligent mail transmission barred MB Financial's tort claim. MB Financial argues on appeal that § 2680(b) does not bar recovery because its claim does not arise out of mail "transmission," but from failure to process properly the fee that would make the P.O. box available. The Postal Service counters that § 2680(b) does bar relief because the harm suffered by MB Financial was the nondelivery of mail.

There is scant authority interpreting this exception. The only Supreme Court case applying it is *Dolan v. U.S. Postal Service*, 546 U.S. 481 (2006). Both sides argue that case controls, although they differ as to the result it requires. No federal court of appeals has interpreted § 2680(b) in a published opinion after *Dolan*.

In *Dolan*, the plaintiff sued the USPS for injuries she suffered when she tripped and fell over mail parcels left on her porch by postal employees. 546 U.S. at 483. The district court and the court of appeals both concluded that the postal service exception barred her claim, because the negligent placement of the parcels was part of the transmission of mail. *Id.* at 483, 486. The Supreme Court reversed, *id.* at 492, construing the exception more narrowly.

The Court explained that, "in isolation, the phrase 'negligent transmission' [in § 2680(b)] could embrace a wide range of negligent acts committed by the Postal Service in the course of delivering mail, including creation of slip-and-fall hazards from leaving packets and parcels on the porch of a residence." *Id.* at 486. Such a reading, however, would sweep too far. The Court said, "context and precedent require a narrower reading." *Id.*

**[3]** As precedent, the Supreme Court looked to *Kosak v. United States*, 465 U.S. 848 (1984), interpreting another FTCA tort liability exception, involving claims for the detention of property by customs officials. In *Kosak*, the Supreme Court had compared the customs service exception in § 2680(c) with the postal service exception in § 2680(b), concluding that the postal exception was narrower and more specific. *Dolan*, 546 U.S. at 487 (citing *Kosak*, 465 U.S. at 855). The Court in *Kosak* had looked to the history of the FTCA and the problems Congress had tried to resolve with the statute, particularly with respect to post office drivers. The *Kosak* Court had observed that " '[o]ne of the principal purposes of the Federal Tort Claims Act was to waive the Government's immunity from liability for injuries resulting from auto accidents in which employees of the Postal System were at fault.' " *Id.* at 487-88 (quoting *Kosak*, 465 U.S. at 855). In light of this purpose, the Supreme Court said in *Dolan* that it could not interpret the phrase "negligent transmission" in § 2680(b) as broadly as the USPS wished so as to cover all negligent acts that occur in the course of mail delivery. *Id.* at 488. The *Dolan* court explained: "Although postal trucks may well be delivering—and thus transmitting—mail when they collide with other vehicles, *Kosak* indicates the United States, nonetheless, retains no immunity." *Id.* The negligence was in truck driving, not in mail transmission, so there was no immunity. On the basis of this analysis, the Supreme Court held that §2680(b) did not bar the plaintiff's claim that negligent placement of mail at her home resulted in her personal injuries. *Id.* at 492. Instead, her claim fell within the overarching principle of the FTCA that the government should be liable for the negligence of its employees in the same manner that private entities would be liable in similar circumstances. *See id.*

*Dolan* may also be read as distinguishing between the historically governmental service of carrying the United States mail and the performance of acts that may be related to delivery, but constitute more ordinary activities that private actors

engage in as well. Hence, negligent driving of postal trucks was a principle activity for which Congress wanted to create liability when the FTCA waived sovereign immunity. The FTCA made the USPS liable for negligence of its drivers in the same manner that state law makes private employers liable for the negligence of their truck driver employees. *See* Restatement (Third) of Agency § 2.04. Construing the exception broadly, so as to cover delivery as well as transmission of the mail, would have immunized the negligence of drivers and frustrated the legislative purpose of the FTCA. The exception would have swallowed the rule.

**[4]** The Supreme Court in *Dolan* quoted with approval an earlier decision of the Second Circuit in *Raila v. United States*, 355 F.3d 118 (2d Cir. 2004). *See Dolan*, 546 U.S. at 486. The Second Circuit had held that the Postal Service exception of § 2680(b) did not immunize the government from liability for a slip-and-fall caused by mail negligently left at the plaintiff's residence. *Id.* at 119. The court had observed that it was interpreting the postal service exception more narrowly than the language of the exception might suggest. *Id.* at 119, 120-21. As the Second Circuit had explained, the phrase "negligent transmission" in § 2680(b) could be read to encompass every negligent action taken by a postal worker "[b]ecause a postal worker's every step is, on some level, taken as part of the transmission of letters and postal matter—that being the business of the USPS." *Id.* at 120 (internal alterations and quotation marks omitted). The court of appeals rejected this reading, concluding that Congress intended the language to be interpreted more narrowly. *Id.* The Supreme Court approved this analysis. *See Dolan*, 546 U.S. at 486.

**[5]** The Court in *Dolan* also approved the Second Circuit's reasoning that focused on whether the plaintiff could insure against the harm of which she complained. *See id.* at 490. The Second Circuit had stated in *Raila* that "where the nature of the injury was such that an injured party [cannot] protect him-

self or herself by registering the parcel, the postal matter exception [does] not apply." 355 F.3d at 122. The Second Circuit had explained that it is easier and more efficient to encourage the purchase of insurance, rather than encourage litigation to protect against the unavoidable mishaps that are incident to the USPS' ordinary function of mail delivery. *Id.* However, where insurance was available to compensate the plaintiff for her loss, the Postal Service exception was not available to the USPS as a shield. *Id.* The sender's registration of the packages could not have compensated for the plaintiff's tripping over them.

**[6]** In this case, the alleged negligence was not in transmitting the mail to the proper place of delivery. Rather, it was in the admittedly improper handling of MB Financial's payment for its post office box, due to the failure to process the renewal. The negligence occurred after the mail was transmitted to the Post Office, and in this sense is similar to the negligence of the postal delivery employees in *Dolan* who did not put the boxes in an appropriate place after they had been delivered to the right address. The policy of the FTCA supports the principle that the USPS should be liable on the same basis that a private provider of mail box services would be liable under state law for failing to exercise reasonable care to see that the box remained open to receive responses to MB Financial's solicitations.

Furthermore, like *Dolan* and *Raila*, the plaintiff's losses are not compensable through insurance. *Cf. Dolan*, 546 U.S. at 490 ("[L]osses of the type for which immunity is retained under § 2680(b) are at least to some degree avoidable or compensable through postal registration and insurance."). The USPS conceded that MB Financial could not have purchased insurance to protect itself against the harm of which it complains. The complaint alleged that, as a result of negligence in record keeping, the plaintiff did not receive responses to its direct mail solicitations.

**[7]** We stress that in holding the complaint states a claim for which the Postal Service is not immune, we are not holding that it is liable. The actual conduct of the postal employees is not yet known, beyond the admissions in the USPS's apology, which was attached in the complaint, for "delay or loss of mail due to improper handling of fees." Because this was a dismissal on the pleadings, however, we do not know the contours of the obligation or the duty the defendants owed the plaintiff. For example, we do not know if the plaintiff acknowledged any limitations on the liability of the post office. We do not know what, if any, representations were made to the plaintiff regarding the availability of the box and the duration of its access. We hold only that the allegations of the complaint indicate that the negligence did not arise out of the transmission of the mail within the meaning of § 2680(b), as construed in *Dolan*.

## B. The Contract Claim

**[8]** With respect to the contract claim, the district court held that because it was based on the same facts as the tort claim, the contract claim was also barred by § 2680(b). Since we hold that the tort claim is not barred by § 2680(b), the contract claim is also not barred.

The district court correctly noted that a plaintiff is generally entitled to plead alternative or multiple theories of recovery on the basis of the same conduct on the part of the defendant. *See* Fed. R. Civ. P. 8(d)(2) ("A party may set out [two] or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones."); *Ajax Hardware Mfg. Corp. v. Indus. Plants Corp.*, 569 F.2d 181, 185 (2d Cir. 1977) ("Negligent performance of a contract may give rise to a claim sounding in tort as well as one for breach of contract.")

The claims in this case arise out of the same situation but do not necessarily rest on the same facts. The tort claim seeks

damages that resulted from the USPS's alleged negligent record keeping that closed the box to MB Financial's mail. The contract claim alleges that the post office breached an express agreement to provide a six-month rental of a post office box in exchange for MB Financial's payment of the fee. Again, because the case was dismissed at the pleading stage we do not know the precise contours of that agreement.

**[9]** The district court correctly recognized that the "sue and be sued" provision of the PRA does not create a cause of action against the USPS. It is merely waiver of sovereign immunity. *See Flamingo*, 540 U.S. at 743-44. Here, the tort claim is asserted pursuant to the FTCA as it has been incorporated in the PRA. The contract claim rests on the alleged contractual agreement of the parties and common law principles of contract law. *See Herin v. U.S. Postal Serv.*, 116 F.3d 988, 990-91 (2nd Cir. 1997). A substantive law foundation thus exists for both of MB Financial's claims as alleged in the complaint.

**REVERSED**.

---

TALLMAN, Circuit Judge, dissenting in part:

The majority today circumvents express congressional intent to immunize the Postal Service from liability arising out of consequential damages claims for failure to deliver mail after M.B. Financial's (M.B.) post office box was closed prematurely following M.B.'s submission of a check to renew the rental period. I respectfully dissent from part III A of the majority's opinion. I otherwise concur in the result the majority reaches.

# I

## A

As a society, we have entered into a social contract with the federal government. We pay taxes and receive certain services in return, some of which would never be provided unless the government steps in to correct what economists term a "market failure." *See U.S. Postal Serv. v. Council of Greenburgh Civic Assoc.*, 453 U.S. 114, 121 (1981) (explaining that "[t]he Post Office played a vital yet largely unappreciated role in the development of our new nation"). At bottom, market failure occurs when there is no incentive for private businesses to provide a service. Historically, the provision of national and international mail services at affordable prices has been among the market failures the government has rectified. *See id.* (noting that "[b]y the early eighteenth century, the posts were made a sovereign function in almost all nations because they were considered a sovereign necessity"). Creating what is now called the United States Postal Service was the American answer. *See id.*

To be sure, in modern times, private players have partially entered the market. Consistent with rational economic incentives to seek the highest returns, these private companies have cornered the express post market niche. They do not, however, deliver letters at the current first class rate of 42 cents anywhere in the country. Typically, private companies provide rush service at much higher rates and do not possess the infrastructure nor economic incentive to deliver mail on the same scale as the Postal Service. Tellingly, they limit by contract of carriage their liability to a modest fixed amount.

The Postal Service provides cheap rates because "it does not seek profits, but only to break even." *U.S. Postal Serv. Inc. v. Flamingo Indus. (USA) Ltd.*, 540 U.S. 736, 747 (2004). We benefit from these discounted rates at a cost. In exchange for universal mail delivery at artificially low but affordable

prices, which the market left to its own devices has no incentive to provide, we may not sue the Postal Service for damages if our mail is not delivered. *See* 28 U.S.C. § 2680(b).[1] Of course, those seeking greater protection, such as a guarantee that overnight mail will be delivered, may pay the premiums that private companies charge. The Postal Service itself offers for additional payment insurance and a guarantee that mail will be delivered.

The Postal Service has grown and become a competitive business in its own right. *See Council of Greenburgh*, 453 U.S. at 122 (stating that "[t]he Postal Service today is among the largest employers in the world"). Immunity from all types of law suits, Congress has recognized, is no longer appropriate. *See* 39 U.S.C. § 401(1). For example, the Postal Service is not immunized when, while driving in the course of delivering mail, a postal employee negligently operates a postal vehicle resulting in personal injury to another driver. *See, e.g.*, *Kosak v. United States*, 465 U.S. 848 (1984). At the same time, Congress has left undisturbed immunity for the Postal Service's core function — the delivery of mail. *See* 28 U.S.C. § 2680(b). The majority distorts these carefully drawn lines and now exposes the Postal Service to liability where Congress intends none.

### B

This is at heart a simple claim that the Postal Service failed to deliver commercial mail. The mail did not reach the postal patron because the postmaster prematurely closed the rented post office box following M.B.'s attempts to renew the rental term.

---

[1]Title 28, section 2680(b) of the United States Code provides that the Federal Tort Claims Act's waiver of immunity found in 28 U.S.C. § 1346(b) "shall not apply to . . . [a]ny claim arising out of the loss, miscarriage, or negligent transmission of letter or postal matter."

M.B. Financial Group, Inc. had rented a post office box for an additional six-month term from a San Diego, California branch station of the U.S. Postal Service. It paid some fifty dollars monthly for the privilege. M.B. hoped to receive responses (and profit) from its direct mail solicitations enticing members of local unions to apply for and secure mortgage loans it offered.

No one disputes that the Postal Service botched the processing of the renewal rental payment and M.B. did not receive the extension of its lease. The post office box was closed too soon; M.B. did not receive all of its mail. No matter the legal characterization, however, M.B. wants as consequential damages the money it thinks it would have realized had it actually received the responses from mortgage-seeking union members, issued mortgages to qualified borrowers, and earned commissions, fees, and interest from the loans. It estimates the loss to be millions of dollars.

Although the facts, if proven, may well state a viable claim for breach of the post office box rental agreement, there can be no viable cause of action for millions of dollars in consequential damages as a result of the postmaster's negligence. It would be astounding to learn that Congress intended otherwise when it enacted § 2680(b).

## II

The majority correctly describes the statutory scheme codifying the basic principles discussed above. The analytic starting point is that, as an "independent establishment of the executive branch of the Government of the United States," the U.S. Postal Service is protected from suit by the doctrine of sovereign immunity *unless* Congress has specifically waived immunity. 39 U.S.C. § 201; *Flamingo Indus.*, 540 U.S. at 740.

And there can be no dispute that Congress has waived certain aspects of the Postal Service's immunity from suit. The

Postal Reorganization Act of 1971, 39 U.S.C. § 401(1), recognized that the Postal Service could "sue and be sued in its official name." *See also Flamingo*, 540 U.S. at 741. Indeed, Congress provided, the waiver of sovereign immunity codified in the Federal Tort Claims Act "shall apply to tort claims arising out of the activities of the Postal Service." 39 U.S.C. § 409(c). Nevertheless, Congress was unwilling to extend liability to "any claim arising out of the loss, miscarriage, or negligent transmission of letters or postal matter." 28 U.S.C. § 2680(b). That is what happened here. Nonetheless, my colleagues misread the scope of this bar to revive M.B.'s suit.

## III

The majority's reading of *Dolan v. U.S. Postal Serv.*, 546 U.S. 481 (2006), the one case in which the Supreme Court has interpreted the contours of the negligent transmission exception, goes too far. In that case, the plaintiff tripped and fell over packages that a Postal Service employee placed on her porch. The Supreme Court explained that "in isolation, the phrase 'negligent transmission' could embrace a wide range of negligent acts committed by the Postal Service in the course of delivering mail, including creation of slip-and-fall hazards from leaving packets and parcels on the porch of a residence." *Dolan*, 546 U.S. at 486. After reviewing both "context and precedent," the Court was persuaded that "a narrower reading [of the bar to suit]" was required; one that would permit the type of slip-and-fall claim that Dolan urged. *Id.*

In reaching this conclusion, as the majority correctly notes, the Court drew on its decision in *Kosak v. United States*, 465 U.S. 848 (1984). In that case, the Court observed that " '[o]ne of the principal purposes of the Federal Tort Claims Act was to waive the Government's immunity for liability for injuries that arise from auto accidents in which employees of the Postal System were at fault.' " *Dolan*, 546 U.S. at 487-88 (quoting *Kosak*, 465 U.S. at 855). This stated purpose led the

Court in *Dolan* to reject a broad reading of the bar to suit, reasoning that "[a]lthough postal trucks may well be delivering —and thus transmitting—mail when they collide with other vehicles, *Kosak* indicated the United States, nonetheless, retains no immunity." *Id.* at 488. Understandably, Dolan's claim was not barred.

We confront a very different factual situation that does not easily lend itself to analogy with automobile accidents resulting from postal employee tortious negligence or slip and falls resulting from negligent placement of postal articles. Indeed, *Dolan* itself recognized situations, similar to this one, in which the Postal Service would retain immunity:

> We think it more likely that Congress intended to retain immunity, as a general rule, only for injuries arising, directly or consequentially, because mail either fails to arrive at all or arrives late, in damaged condition, or at the wrong address. Illustrative instances of the exception's operation, then, *would be personal or financial harms arising from nondelivery or late delivery of sensitive materials or information ( e.g., medicines or a mortgage foreclosure notice) or from negligent handling of a mailed parcel ( e.g., shattering of shipped china).* Such harms, after all, are the sort primarily identified with the Postal Service's function of transporting mail throughout the United States.

*Id.* at 489 (emphasis added).

The financial harm suffered by M.B. arose from nondelivery of its mail. Stated another way, the damages that M.B. seeks arise "consequentially, because mail either fail[ed] to arrive at all or arrive[d] late, in damaged condition, or at

the wrong address." For this occurrence, Congress has not waived sovereign immunity. *See* 28 U.S.C. § 2680(b).[2]

The majority insists that we make this case more complicated than it is. It reads *Dolan* "as distinguishing between the historically governmental service of carrying the United States mail and the performance of acts that may be related to delivery, but constitute more ordinary activities that private actors engage in as well." Op. at 13769-70. This observation may be correct as far as it goes. But it is the majority's application that fails to persuade. The majority concludes that "the alleged negligence was not in transmitting the mail to the proper place of delivery. Rather, it was in the admittedly improper handling of MB Financial's payment for its post office box, due to the failure to process the renewal. The negligence occurred after the mail was transmitted to the Post Office, and in this case is similar to the negligence of the postal delivery employees in *Dolan* who did not put the boxes in an appropriate place after they had been delivered to the right address." Op. at 13771. That the complaint pleads a cause of action for negligence based on allegations that the $ 50 rental renewal fee was improperly processed does not speak to the nature of the damages sought. The damages arise in this case *solely* because the mail failed to reach its destination point, and for that occurrence the Postal Service is

---

[2]The majority laments my reading of *Dolan* as incomplete because, my colleagues argue, *Dolan* further stands for the proposition that "losses of the type for which immunity is retained under § 2680(b) are at least to some degree compensable through postal registration and insurance." 460 U.S. at 490. I am unpersuaded that this statement, or the fact that the parties appear to agree that no insurance was available, changes the outcome. Insurance for the early closing of a post office box may not be available, but that is not the risk for which M.B. now seeks indemnification. It wanted its mail to arrive, mortgages to be placed through its offices, and to thereby derive financial benefit from its direct mail solicitations. There were a number of ways M.B. could have structured its business transactions to protect itself from this risk. For example, rather than look to the Postal Service, M.B. could have purchased business loss insurance.

immune. We were reversed in *Flamingo Industries (USA) Ltd. v. U.S. Postal Service* because we thought the Postal Service would face similar antitrust liability to that of its competitors when Congress said the corporation could "sue and be sued" as if it were a private entity rather than part of the government. 302 F.3d 985 (9th Cir. 2002), *rev'd,* 540 U.S. at 744. We were wrong then. We are wrong now.

The majority's rule would have us engage in a type of highly particularized and complicated temporal debate about when transmission ends and delivery-related activity begins— the former protected by sovereign immunity and the latter not. The majority's reading of *Dolan*, by way of example, would have to mean that transmission ended at the porch steps. That interpretation could have force if the postal employees, say, took a break at the porch and then continued on to place the mail on the porch. Yet, what would be the result if the postal employees walked, without pause, from the Jeep onto the porch, placing the parcels along the sidewalk leading up to the porch? Would the Postal Service escape liability because the mail was still in transit?

There is, in my view, no way to reach a reasoned result under such an analogy. Neither *Dolan* nor the statutory scheme compel the result the majority reaches, and a more workable solution is apparent from the case law. The common thread among the cases is that where the damages that flow from the alleged negligence are injuries distinct from non-delivery, late delivery, or loss of mail, the exception to immunity does not apply. In *Dolan*, the damages sought surely sounded in pain and suffering and had nothing to do with the mail other than it was placed in a negligent manner and created a trip-and-fall hazard that proximately caused the pain and suffering. Similarly, in the illustrative situation described in *Kosak*, the damages from the auto accident were unrelated to the mail; they too were pain and suffering and other attendant tort damages.

The commercial damages M.B. wants here, no matter how liberally we construe the complaint, are the value of the mortgage business lost when the mail was not placed in its rented mailbox. In other words, M.B. prays for damages consisting of "financial harms arising from nondelivery or late delivery of sensitive materials or information." *Dolan*, 546 U.S. at 489. Recovery on those grounds, no matter how artfully the plaintiff might choose to plead the alleged negligence claim, is foreclosed because "[s]uch harms, after all, are the sort primarily identified with the Postal Service's function of transporting mail throughout the United States." *Id.* Congress has not waived its sovereign immunity for this kind of action. 28 U.S.C. § 2680(b).

## IV

Because the majority would allow recovery of enormous consequential commercial damages for what amounts to a simple claim of failure to deliver mail, I respectfully dissent from part III A of the opinion. Although M.B. states no colorable claim with respect to its negligence claim, I agree that M.B. may recover under a state law breach of contract theory for premature loss of its post office box. Damages would be limited to a refund of the fee to renew the post office box.