[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 22, 2011
JOHN LEY
CLERK

No. 10-14936
Non-Argument Calendar

_____

D.C. Docket No. 1:10-cr-20079-CMA-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ALEXANDER MENENDEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 22, 2011)

Before WILSON, MARTIN and BLACK, Circuit Judges.

PER CURIAM:

Alexander Menendez appeals his convictions and sentences for seven counts of theft of a thing of value of the United States, in violation of 18 U.S.C. § 641, and four counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1). After review, we affirm.

I.

In February 2010, a grand jury sitting in the Southern District of Florida returned a 36-count indictment charging Menendez with theft of a thing of value of the United States, in violation of 18 U.S.C. § 641, and aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1). The indictment alleged that Menendez impersonated "J.O." and used fraudulent checks to obtain postage and other services from the United States Postal Service ("Postal Service"). After a jury trial, Menendez was convicted of seven counts of theft from the United States and four counts of aggravated identity theft and was sentenced to a total of 36 months in prison. This is Menendez's appeal.

II.

Menendez contends that his convictions under 18 U.S.C. § 641 should be reversed on the grounds that the indictment failed to state an offense. Section 641 provides:

Whoever embezzles, steals, purloins, or knowingly converts to his use

2

> or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof . . . [s]hall be fined under this title or imprisoned not more than ten years or both . . . .

18 U.S.C. § 641 (emphasis added). Menendez argues that the Postal Service is not an "agency" within the meaning of § 641 and thus his conduct did not violate that statute. The term "agency" is defined in Title 18 to "include[ ] any . . . independent establishment . . . of the United States. . . ." 18 U.S.C. § 6. The government maintains that the Postal Service is an "independent establishment" for purposes of 18 U.S.C. § 6 because the Postal Reorganization Act ("PRA") created the Postal Service "as an independent establishment of the executive branch of the Government of the United States." 39 U.S.C. § 201 (emphasis added); see also U.S. Postal Serv. v. Famingo Indus. (USA) Ltd., 540 U.S. 736, 746, 124 S. Ct. 1321, 1328 (2004) ("The PRA gives the Postal Service a high degree of independence from other offices of the Government, but it remains part of the Government."); Nat'l Ass'n of Greeting Card Publishers v. U.S. Postal Serv., 462 U.S. 810, 813, 103 S. Ct. 2717, 2721 (1983) (explaining that the PRA abolished the Post Office Department and "established the United States Postal Service as an independent agency under the direction of an eleven-member Board

3

of Governors").

Menendez disagrees, pointing out that the term "independent establishment" is not defined in Title 18. For that reason, Menendez asserts that "independent establishment" should be construed to mean the same thing in Title 18 as in Title 5 of the U.S. Code. Section 104 of Title 5 provides that:

For the purposes of this title, 'independent establishment' means—

(1) an establishment in the executive branch <u>(other than the United States Postal Service or the Postal Regulatory Commission)</u> which is not an Executive department, military department, Government corporation, or part thereof, or part of an independent establishment.

5 U.S.C. § 104(1) (emphasis added). Based on this exception in 5 U.S.C. § 104, Menendez argues that the Postal Service is not an "independent establishment" for purposes of 18 U.S.C. § 6 and hence not an "agency" within the meaning of § 641.

Alternatively, Menendez argues that 18 U.S.C. § 641 does not apply to the Postal Service in light of § 410(a) of the PRA, which provides:

Except as provided by subsection (b) of this section, and except as otherwise provided in this title or insofar as such laws remain in force as rules or regulations of the Postal Service, <u>no Federal law dealing with public or Federal contracts, property, works, officers, employees, budgets, or funds, including the provisions of chapters 5 and 7 of title 5, shall apply to the exercise of the powers of the Postal Service.</u>

39 U.S.C. § 410(a) (emphasis added). Menendez asserts that § 410(a) removes him for application of the charges he faces insofar as the charges arise from a

federal law that cannot apply to the Postal Service. The government, by contrast, argues that because the Postal Service is an agency of the United States from which individuals steal, § 641 is excepted from § 410(a) under § 410(b)(2). 39 U.S.C. § 410(b)(2) makes the Postal Service subject to "all provisions of title 18 dealing with the Postal Service." Id. § 410(b)(2).

"We review issues of statutory construction de novo." United States v. Frye, 402 F.3d 1123, 1126 (11th Cir. 2005). We also review de novo "[w]hether a criminal statute reaches a defendant's conduct." United States v. Lopez-Vanegas, 493 F.3d 1305, 1311 (11th Cir. 2007). "In interpreting the scope of a statute, we must first look to its language. If the language of the statute is unambiguous, our analysis ordinarily comes to an end." United States v. Kirkland, 12 F.3d 199, 202 (11th Cir. 1994) (citations omitted).

Here, the district court was correct in not dismissing the indictment. As noted above, section 641 of Title 18 makes it unlawful to steal a thing of value from an "agency" of the United States. Under 18 U.S.C. § 6, an independent establishment of the United States is an agency. See id. § 6 ("The term 'agency' includes any . . . independent establishment . . . of the United States . . . ."). The Postal Service is "an independent establishment of the executive branch of the Government of the United States." 39 U.S.C. § 201. Thus, the Postal Service is

5

plainly an "agency" for purposes of § 641.

Neither are we persuaded by Menendez's argument that the Postal Service is not an "independent establishment" under 18 U.S.C. § 6 because the Postal Service is excepted from the definition of independent establishment in 5 U.S.C. § 104(1). By its plain language, the definition of "independent establishment" in § 104(1) only applies to Title 5. See 5 U.S.C. § 104(1) ("For the purpose of this title, 'independent establishment' means . . . an establishment in the executive branch (other than the United States Postal Service or the Postal Regulatory Commission)" (emphasis added)); see also CBS Inc. v. PrimeTime 24 Joint Venture, 245 F.3d 1217, 1222 (11th Cir. 2001) ("The rule is that we must presume that Congress said what it meant and meant what it said." (quotation marks omitted)); Gonzalez v. McNary, 980 F.2d 1418, 1421 (11th Cir. 1993) ("Absent a clearly expressed legislative intent to the contrary, the plain and unambiguous language of the statute must prevail."). Of course, the fact that the Postal Service is expressly excepted from the definition of "independent establishment" for purposes of Title 5, suggests that the Postal Service is an "independent establishment" as that term is used in other Titles of the U.S. Code. If the Postal Service was not "an establishment in the executive branch" as the term is used in 5 U.S.C. § 104(1), then the parenthetical "other than the United States Postal

6

Service" "would be meaningless, pointless, superfluous[,] [a]nd that 'is an interpretative no-no.'" Myers v. TooJay's Mgmt. Corp., 640 F.3d 1278, 1285 (11th Cir. 2011). For these reasons, we conclude that the Postal Service is an "independent establishment" under 18 U.S.C. § 6 and hence an "agency" for purposes of § 641.

Menendez's remaining argument relates to the exemption of the Postal Service from a federal law "dealing with public or Federal contracts, property, works, officers, employees, budgets, or funds" unless the law is included within § 410(b), "remain[s] in force as [a] rule[ ] or regulation[ ] of the Postal Service," or the PRA provides otherwise. See 39 U.S.C. § 410(a). Both sides agree that Menendez was convicted under a federal law subject to § 410(a), but they disagree about whether it is saved by § 410(b). The government maintains that § 641 falls within § 410(b)(2), which provides that the Postal Service is subject to "all provisions of title 18 dealing with the Postal Service." (emphasis added). Menendez argues that § 410(b)(2) does not apply because unlike other provisions in Title 18, § 641 does not expressly reference the Postal Service. Cf. 18 U.S.C. § 1707 ("Whoever steals, purloins, or embezzles any property used by the Postal Service . . . shall be fined under this title or imprisoned not more than three years . . . ." (emphasis added)). In other words, Menendez asserts that a provision in

7

Title 18 "deal[s] with the Postal Service" only if the provision mentions the Postal Service by name.

The phrase "dealing with the Postal Service" is not defined in the PRA. "We interpret words that are not defined in a statute with their ordinary and plain meaning because we assume that Congress uses words in a statute as they are commonly understood." United States v. Frank, 599 F.3d 1221, 1234 (11th Cir. 2010); see also Warshauer v. Solis, 577 F.3d 1330, 1335 (11th Cir. 2009) ("The starting point in statutory interpretation is the language of the statute itself. If the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case, and the statutory scheme is coherent and consistent, the inquiry is over." (citation and quotation marks omitted)). In a different context, the Supreme Court has recognized that "dealing with" is a "broad term." See N.L.R.B. v. Cabot Carbon Co., 360 U.S. 204, 211, 79 S. Ct. 1015, 1020–21 (1959) (concluding that "dealing with" as used in 29 U.S.C. § 152(5) is a "broad term" and is not synonymous to "bargaining with"). The dictionary definition of "dealing with" is "to be concerned." Webster's II New Riverside University Dictionary 350 (1984). Given the breadth of the language used by Congress, we conclude that Menendez's construction of § 410(b)(2) is overly narrow and that the plain meaning of "dealing with" includes 18 U.S.C. § 641. See United States

8

v. Estus, 544 F.2d 934, 935–36 (8th Cir. 1976) (holding that 18 U.S.C. § 1001, which criminalizes making false statements to a United States agency, is specifically made applicable to the Postal Service by 39 U.S.C. § 410(b)(2)).

Our conclusion that the scope of § 410(b)(2) is not limited to provisions of Title 18 that expressly reference the Postal Service is bolstered by the other subsections of § 410(b). Section 410(b)(1) lists specific sections and chapters of Title 5 that apply to the Postal Service. Similarly, § 410(b)(4) provides that the Postal Service is subject to specific sections and chapters of Title 40. The fact that Congress did not enumerate specific statutory provisions of Title 18 that apply to the Postal Service in § 410(b)(2) weighs in favor of broadly construing the phrase "dealing with the Postal Service." Accepting Menendez's construction of § 410(b)(2) would effectively require us to rewrite the statute, which we cannot do. See Friends of Everglades v. S. Fla. Water Mgmt. Dist., 570 F.3d 1210, 1224 (11th Cir. 2009) ("[W]e are not allowed to add or subtract words from a statute; we cannot rewrite it."); Harris v. Garner, 216 F.3d 970, 976 (11th Cir. 2000) ("We will not do to the statutory language what Congress did not do with it, because the role of the judicial branch is to apply statutory language, not to rewrite it.").

We also reject Menendez's argument that his statutory construction is required by the rule of lenity. "The rule does not apply when a statute is

9

unambiguous or when invoked to engraft an illogical requirement to its text."

Salinas v. United States, 522 U.S. 52, 66, 118 S. Ct. 469, 478 (1997). Further,

"[t]he mere possibility of a narrower statutory construction by itself does not make

the rule of lenity applicable." United States v. McNair, 605 F.3d 1152, 1192 (11th

Cir. 2010). For the rule to apply, there must be a "grievous ambiguity or

uncertainty in the statute." Muscarello v. United States, 524 U.S. 125, 138–39,

118 S. Ct. 1911, 1919 (1998) (quotation marks omitted). As explained above,

section 410(b)(2) is unambiguous and extends to 18 U.S.C. § 641. "[T]here is no

'grievous ambiguity' here." Id. Accordingly, the rule of lenity does not apply.

Having concluded that 18 U.S.C. § 641 reaches Menendez's conduct, we

also reject his argument that his convictions under 18 U.S.C. § 1028A(a)(1) should

be reversed because they are based on his violation of § 641. Based on all of this,

we conclude that the district court properly declined to dismiss the indictment for

failure to state an offense.

### III.

Menendez also contends that he was denied his constitutional right to a fair

trial by an impartial jury. After the jury's verdict, Menendez moved the district

court to investigate alleged juror misconduct. The motion was prompted by an

anonymous telephone call received by Menendez's counsel two days after the

10

jury's verdict. The anonymous caller stated: "I was not on the jury, but I know that Mr. Carton took over the deliberations. You should look into it. He may have friends that are prosecutors."[1] In his motion, Menendez also included information from Carton's LinkedIn.com[2] profile stating that Carton worked on "Multiple Bank Reconciliations" and provided "Court Support Aide" services as a certified public accountant. Menendez argued that the anonymous telephone call and the information on Carton's LinkedIn.com profile suggested bias and requested that the district court conduct an investigation. The district court denied Menendez's motion concluding that he had failed to make a colorable showing that any external influence had affected the jury's verdict.

We review a district court's decision not to conduct an investigation into alleged juror misconduct for abuse of discretion. See United States v. Prosperi, 201 F.3d 1335, 1340 (11th Cir. 2000) ("Investigation of alleged juror misconduct is committed to the discretion of the district court and is reviewed only for an abuse of that discretion."). "A jury is presumed to have acted impartially." Ward v. Hall, 592 F.3d 1144, 1175 (11th Cir. 2010). A district court has a duty to

---

[1] Jonathan Carton was Juror #18 at Menendez's trial.

[2] LinkedIn.com is a business-related social networking site. A registered user can create a profile that contains information commonly included in a resume such as the user's education and employment history.

11

investigate alleged juror misconduct "only when the party alleging misconduct makes an adequate showing of extrinsic influence to overcome the presumption of jury impartiality." United States v. Cuthel, 903 F.2d 1381, 1383 (11th Cir. 1990); see also Ward, 592 F.3d at 1175 (explaining that "[a] defendant may rebut [the presumption of impartiality] by making a colorable showing that juror exposure to extraneous information has violated his right to an impartial jury"). "[T]he defendant must do more than speculate; he must show clear, strong, substantial and incontrovertible evidence that a specific nonspeculative impropriety has occurred." Cuthel, 903 F.3d at 1383 (quotation marks and alterations omitted). "The more speculative or unsubstantiated the allegation of misconduct, the less the burden to investigate." United States v. Caldwell, 776 F.2d 989, 998 (11th Cir. 1985).

The district court did not abuse its discretion in denying Menendez's motion to investigate alleged juror misconduct. Neither the anonymous telephone call nor the information on Carton's LinkedIn.com profile constituted "clear, strong, substantial and incontrovertible evidence that a specific nonspeculative impropriety . . . occurred." Cuthel, 903 F.3d at 1383 (quotation marks and alterations omitted). The anonymous caller was not a member of the jury and therefore could not have been privy to the jury deliberations. Thus, the caller's

assertion that Carton "took over the deliberations" at best was based on second-hand knowledge.  Further, the caller equivocally stated only that Carton "may have friends that are prosecutors." (emphasis added).  Any impropriety suggested by the facts that Carton worked on "Multiple Bank Reconciliations" and provided "Court Support Aide" services is vague and speculative.  Menendez's counsel admitted as much in his motion, stating that he "ha[d] no understanding of what th[o]se entries indicate."

Indeed, the fact that the jury reached a split verdict supports the conclusion that the jury reached a reasoned verdict and was not influenced by extraneous information that could have prejudiced Menendez.  See Skilling v. United States, ___ U.S. ___, 130 S. Ct. 2896, 2916 (2010) ("'The jury's ability to discern a failure of proof of guilt of some of the alleged crimes indicates a fair minded consideration of the issues and reinforces our belief and conclusion that [external information] did not lead to the deprivation of [the] right to an impartial trial.'" (quotation marks omitted and first alteration added)).  No abuse of discretion occurred.

IV.

Menendez also attacks his sentence.  He contends that the district court violated his Sixth Amendment rights by taking into account acquitted conduct in

13

calculating the loss amount under U.S.S.G. § 2B1.1. Menendez's position is without merit. We have previously held that acquitted conduct may be considered at sentencing, provided that the conduct is proved by a preponderance of the evidence. See United States v. Faust, 456 F.3d 1342, 1348 (11th Cir. 2006). Adequate evidence in the record supports the loss amount attributed to Menendez. The district court's consideration of acquitted conduct was not error.

Menendez also challenges the district court's application of a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1. The district court applied the enhancement after concluding that Menendez misrepresented the extent of his assets to the magistrate judge in order to obtain appointed counsel. Menendez concedes that the district court properly applied the enhancement under our case law but argues that those decisions were wrongly decided and are likely to be overruled. See, e.g., United States v. Ruff, 79 F.3d 123, 125 (11th Cir. 1996) (holding that obstruction of justice enhancement was properly applied where the defendant provided materially false information to a magistrate judge). Under the prior panel precedent rule, we are bound by our prior case law. See United States v. Smith, 122 F.3d 1355, 1359 (11th Cir. 1997) ("Under the prior panel precedent rule, we are bound by earlier panel holdings . . . unless and until they are overruled en banc or by the Supreme Court."). The district court did not err in applying the

14

obstruction of justice enhancement.

V.

For the forgoing reasons, Menendez's convictions and sentences are affirmed.

AFFIRMED.