17-1907-cv
*Bartlett v. Honeywell International Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 25th day of May, two thousand eighteen.

PRESENT:

ROBERT D. SACK,
DEBRA ANN LIVINGSTON,
SUSAN L. CARNEY,
    *Circuit Judges*.

_____

ROBERT BARTLETT, COLLEN BARTLETT, WILLIAM BARRINGTON, III, MICHELLE BARRINGTON, KIM CALVERASE, DANIEL DANTUONO, VERUSKA DANTUONO, DAVID DEDO, JULIETTE DEDO, TIMOTHY DELANY, SALLY DELANY, BRIAN DELLOW, TRACY DELLOW, RON GRYZLEC, BRENDA CARPENTER, DOUGLAS HART, CHARLENE HART, THOMAS KSHYNA, KIMBERLY KSHYNA, MATTHEW LICAMELI, TRACY LICAMELI, JOHN MARINELLI, KATHLEEN MARINELLI, WILLIAM MATHEWSON, STEPHANIE MATHEWSON, PETER MEDINA, JENAFER MEDINA, BRYAN MIGNONE, ELAINE EVERITT, BRIAN MURPHY, KIMBERLY MURPHY, SCOTT MUSEMECI, JILL MUSEMECI, JERRY PARZYCH, KRISTINA PARZYCH, JONATHAN PATCH, MARGARET PATCH, TIMOTHY PIEPER, SHARON PIEPER, FREDERICK PUCHTA, HEATHER PUCHTA, LYNORE DE LA ROSA, MARK DE LA ROSA, ROBERT SMITH, LORI SMITH, JOEY ST. LOUIS, ROBERT VERTUCCI, MEGAN VERTUCCI, MICHAEL WADE, LYNDA WADE, DAVID CORRENTE, GARY CORRENTE, LUCY CORRENTE, SARAH

MARTINELLI, DEBORAH ROSS, individually and as the representative of the Estate of EDWARD WILBUR, THOMAS GDULA, KIMBERLY GDULA, MICHAEL KSHYNA, ALPHA KSHYNA, MCKENZIE YOST,

*Plaintiffs-Appellants*,

CAMILLUS CLEAN AIR COALITION,

*Plaintiff-Cross-Claimant*,

v.                                                                                    17-1907-cv

HONEYWELL INTERNATIONAL INC.,

*Defendant-Cross-Defendant-Appellee*.

_____

| | |
|---|---|
| For Plaintiffs-Appellants: | KENNETH F. MCCALLION (Kristian K. Larsen, *on the brief*), McCallion & Associates LLP, New York, New York. |
| For Defendant-Cross-Defendant-Appellee: | BRIAN D. ISRAEL (Andrea M. Broach, Robert Leider, Kerry A. Dziubek, *on the brief*), Arnold & Porter Kaye Scholer LLP, Washington, District of Columbia, New York, New York. |

Appeal from a judgment of the United States District Court for the Northern District of New York (Scullin, *J.*) entered May 19, 2017.

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiffs-Appellants, residents and property owners living near a waste disposal area known as "Wastebed 13" at the Onondaga Lake Superfund site (the "residents"), appeal from a May 19, 2017 judgment of the United States District Court for the Northern District of New York

2

(Scullin, *J.*) granting the motion of Defendant-Cross-Defendant-Appellee Honeywell International Inc. ("Honeywell") to dismiss the residents' Amended Complaint. Prior to oral argument, we directed the parties to file supplemental briefing as to the basis of our and the district court's subject matter jurisdiction. This appeal turns on whether we have jurisdiction and, if so, whether the state tort law claims alleged by the residents are preempted by the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), Pub. L. No. 96-510, 94 Stat. 2767, *codified as amended*, 42 U.S.C. §§ 9601 *et seq*. The district court concluded that it had jurisdiction and the state-law claims were preempted by CERCLA. We agree. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, which we reference only as necessary to explain our decision to affirm.

## I.      SUBJECT MATTER JURISDICTION

Although the parties did not dispute our or the district court's subject matter jurisdiction in their original appellate briefs, "every federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review, even though the parties are prepared to concede it." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998) (brackets omitted) (citations and internal quotation marks omitted). In earlier proceedings, the district court concluded that it had both federal question and supplemental jurisdiction over the residents' claims, under 28 U.S.C. § 1331 and 28 U.S.C. § 1367, respectively, and declined to address whether it had diversity jurisdiction, under 28 U.S.C. § 1332. *See Camillus Clean Air Coal. v. Honeywell Int'l, Inc.*, No. 5:13-cv-365 (FJS) (DEP), 2013 WL

3

4774507, at *1–3 (N.D.N.Y. Sept. 4, 2013).  Upon review, we conclude that we have subject matter jurisdiction as both federal question and diversity jurisdiction are present.[1]

## A. FEDERAL QUESTION JURISDICTION

Under 28 U.S.C. § 1331, "[t]he district courts shall have original jurisdiction of all civil actions *arising under* the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331 (emphasis added).   The Supreme Court has explained that "where a claim finds its origins in state rather than federal law . . . we have identified a 'special and small category' of cases in which arising under jurisdiction still lies."  *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh,* 547 U.S. 677, 699 (2006)).   The *Gunn* Court noted that "federal jurisdiction over a state law claim will lie if a federal issue is:   (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  *Id.*   For substantially the reasons stated by the district court, we agree that the issues implicated by the residents' allegations – including whether Honeywell has complied with a consent decree approved by a federal district court and the

---

[1] The district court suggested, in the alternative, that even if federal question and diversity jurisdiction were absent, it could nonetheless exercise supplemental jurisdiction over the residents' state-law claims.  *See Camillus Clean Air Coal.*, 2013 WL 4774507, at *2–3.  We disagree.  Our recent precedent precludes the exercise of supplemental jurisdiction where an action's sole federal claim has been dismissed for lack of subject matter jurisdiction.  *See Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 399 (2d Cir. 2017) ("[W]hen a district court correctly dismisses all federal claims for lack of subject-matter jurisdiction . . . the district court is thereby precluded from exercising supplemental jurisdiction over related state-law claims."); *id.* at 399 n.5 (collecting cases demonstrating that "[e]very other federal court of appeals to have considered the issue has also so held[]").  Of course, nothing in this supplemental jurisdiction discussion alters our determination that we possess subject matter jurisdiction in this appeal on both federal question and diversity jurisdiction grounds.

4

circumstances under which CERCLA might preempt the residents' state tort law claims – raise disputed, substantial federal issues which are amenable to federal court resolution without interfering with the federal-state balance approved by Congress. *See Camillus Clean Air Coal.*, 2013 WL 4774507, at *1–2. As the district court persuasively observed, "under the circumstances of this case, 'a contrary holding that the district court lacks jurisdiction could allow litigants to use the state courts as a vehicle to undermine a federal court's ability to police its consent decrees[.]'" *Id.* at *2 n.2 (quoting *United States v. City of Loveland*, 621 F.3d 465, 472 (6th Cir. 2010)). Accordingly, subject matter jurisdiction is present because we have federal question jurisdiction.

### B. DIVERSITY JURISDICTION

Additionally, we have subject matter jurisdiction for the independent reason that diversity jurisdiction's requirements are satisfied. While the district court declined to address whether the district court had diversity jurisdiction under 28 U.S.C. § 1332, *see id.* at *3 n.3, we may affirm on any ground supported in the record, *see Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 63 (2d Cir. 1997). Diversity jurisdiction is present when there is complete diversity between the parties and "the matter in controversy exceeds the sum or value of $75,000." 28 U.S.C. § 1332(a). Here, all the requirements for diversity jurisdiction are met. To focus first on the inception of the lawsuit, there was complete diversity between all residents and Honeywell both at the time the original complaint was filed on March 18, 2013 and then on April 2, 2013, when Honeywell removed the action to federal court. All plaintiffs are and were New York citizens and Honeywell was and remains a corporation organized under Delaware law, with its principal place of business in Morristown, New Jersey.

5

The residents' attempts to contend otherwise are unavailing.   First, they argue that because two plaintiffs, Charlene and Douglas Hart, moved from New York to New Jersey in January 2014 (and then back to New York around November 2015), diversity jurisdiction is defeated. However, the move to New Jersey occurred after the original complaint was filed and after Honeywell's removal.   And it is well established that "[j]urisdiction once acquired . . . is not divested by a subsequent change in the citizenship of the parties."   *Wichita R.R. & Light Co. v. Pub. Utils. Comm'n of the State of Kan.*, 260 U.S. 48, 54 (1922); *see also OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 218 (2d Cir. 2016) (per curiam).

Next, the residents contend – contrary to settled case law – that Honeywell should be considered a citizen of New York because it uses an office in upstate New York for purposes relating to the Consent Decree.   If, as the residents urge, we were to deem Honeywell a New York citizen, its purported New York citizenship would defeat diversity jurisdiction since every plaintiff is a citizen of New York.   However, under 28 U.S.C. § 1332(c)(1), "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."   And the Supreme Court has held that a company's principal place of business can be only a "single" state, *Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010), and "should normally be the place where the corporation maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination, *i.e.,* the 'nerve center,' and not simply an office where the corporation holds its board meetings," *id*.   Here, both the residents' Amended Complaint and even their original complaint allege that Honeywell is headquartered in New Jersey, not in New York.   In short, because every plaintiff is a citizen of New York and Honeywell is a citizen of Delaware (because it is

6

incorporated there) and New Jersey (because that is the location of its lone principal place of business), complete diversity of citizenship exists between all plaintiffs and Honeywell.

As for the $75,000 jurisdictional threshold for the value of the "matter in controversy," 28 U.S.C. § 1332(a), the residents claim that each and every plaintiff must meet the $75,000 threshold. But the Supreme Court has explicitly rejected the precedents relied upon by the residents for this proposition. In *Exxon Mobil Corp. v. Allapattah Servs. Inc.*, the Supreme Court held that a defendant must only establish a reasonable probability that *one* (not all) of the plaintiffs' claims exceeds $75,000. *See* 545 U.S. 546, 566–67 (2005). Here, based upon the allegations in the pleadings, the *Exxon Mobil* standard – whether there is a reasonable probability that the damages sought by at least one plaintiff meet the $75,000 threshold – is satisfied. The residents have not asserted an amount of monetary damages, so, in these circumstances, we "may look outside those pleadings to other evidence in the record" to determine the amount in controversy. *United Food & Commercial Workers Union, Local 1919 v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 305 (2d. Cir. 1994). The residents do not deny that *at least one* of their claims might exceed $75,000. Instead, they focus on their out-of-date legal argument that *each and every plaintiff* must meet the $75,000 threshold, which is expressly foreclosed by *Exxon Mobil*. And, regardless, the residents' allegations involve a wide range of conduct likely to exceed the $75,000 threshold, encompassing personal injury claims, property damage, and loss of enjoyment. Moreover, the residents never stipulated that they would limit their recovery to less than $75,000 per plaintiff. Thus, there is a reasonable probability that at least one plaintiff meets the $75,000 jurisdictional threshold. Accordingly, we conclude that diversity jurisdiction is present.

7

## II. CERCLA PREEMPTION

Turning to the merits, we conclude that CERCLA preempts the residents' state tort law claims.

### A. LEGAL FRAMEWORK

We review *de novo* a district court's grant of a motion to dismiss for failure to state a claim on which relief can be granted, "accepting all factual allegations in the complaint as true and drawing all reasonable inferences in favor of the plaintiff." *See Caro v. Weintraub*, 618 F.3d 94, 97 (2d Cir. 2010). In resolving a motion to dismiss, "we may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). "[W]here a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 147 (2d Cir. 2011) (per curiam). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a court must accept as true all the factual allegations in the complaint, that requirement is "inapplicable to legal conclusions." *Id.* The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

8

Conflict preemption applies "where it is impossible for a private party to comply with both state and federal law and where under the circumstances of a particular case, the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372–73 (2000) (internal brackets, citations, and quotation marks omitted); *see also In re Tribune Co. Fraudulent Conveyance Litig.*, 818 F.3d 98, 110 (2d Cir. 2016) ("Preemption is always a matter of congressional intent, even where that intent must be inferred."). CERCLA was enacted in 1980 "in response to the serious environmental and health risks posed by industrial pollution." *United States v. Bestfoods*, 524 U.S. 51, 55 (1998). "As its name implies, CERCLA is a comprehensive statute that grants the President broad power to command government agencies and private parties to clean up hazardous waste sites." *Id.* (quoting *Key Tronic Corp. v. United States*, 511 U.S. 809, 814 (1994)); *see also* 42 U.S.C. § 9604. In assessing conflict preemption in the CERCLA context, we are mindful that two of CERCLA's purposes are "to encourage settlements and the prompt cleanup of contaminated sites." *Town of Halfmoon v. Gen. Elec. Co.*, 105 F. Supp. 3d 202, 219 (N.D.N.Y. 2015). As the Third Circuit has explained, in enacting CERCLA, Congress also stressed the importance of efficiency and regulatory expertise in effecting a remedy. *See Clinton Cty. Comm'rs v. E.P.A.*, 116 F.3d 1018, 1021–24 (3d Cir. 1997) (en banc).

## B. DISCUSSION

The instant conflict preemption analysis focuses on whether, under the circumstances of this particular case, the Amended Complaint's alleged state tort law violations conflict with a CERCLA remediation plan enforced by a federal consent decree. That is, whether it is impossible for Honeywell to comply with both state tort law and CERCLA or whether the residents' state-law

9

claims stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

One of CERCLA's provisions, 42 U.S.C. § 9622(e)(6), prohibits Honeywell from commencing any remedial action except for those expressly authorized in the consent decree:

> When either the President, or a potentially responsible party pursuant to an administrative order or consent decree under this chapter, has initiated a remedial investigation and feasibility study for a particular facility under this chapter, *no potentially responsible party may undertake any remedial action at the facility unless such remedial action has been authorized by the President.*

42 U.S.C. § 9622(e)(6) (emphasis added). For its part, the district court determined that CERCLA preempts the residents' claims because the allegations amount to nothing more than a belated challenge to the adequacy of the consent decree itself (as opposed to a failure by Honeywell to comply with or properly implement the consent decree). *See Bartlett v. Honeywell Int'l, Inc.*, 260 F. Supp. 3d 231, 246 (N.D.N.Y. 2017). That is, the district court reasoned, at bottom the residents were impermissibly arguing, on a state tort law theory, that Honeywell should have departed from the consent decree's terms by conducting additional or different remedial action than that mandated by CERCLA and the consent decree.

As to many of the Amended Complaint's allegations, we agree with the district court that CERCLA preempts the residents' claims because the residents merely challenge the adequacy of the consent decree itself. For instance, the residents repeatedly protest Honeywell's purported failure to conduct the geotube process in a "closed system." J.A. 90–92. But this characterization of the system as one that was supposed to have been essentially hermetically sealed is misleading, as statements from Honeywell, the United States Environmental Protection Agency ("EPA"), and the New York State Department of Environmental Conservation ("DEC")

10

included in the seven volumes of appendices attached to the residents' Amended Complaint demonstrate that such hermetic sealing was never anticipated under the consent decree. *See, e.g.*, *id.* at 327 ("The *majority* of contaminants will remain trapped within the sediments in the geotextile tubes; however, *some contaminants will be contained in the draining water*." (emphases added)); *id.* at 1598 (describing a "*virtually* closed system" and stating that the system will be "enclosed, *to the extent practicable*" (emphases added)). Similarly unavailing are the residents' allegations about purported deficiencies in Honeywell's perimeter air monitoring system, such as the system's inability to detect certain emissions. In fact, Honeywell publicly disseminated the specifications of the allegedly insufficient perimeter air monitoring system, the DEC and EPA reviewed and approved this system, and the system became part of the binding consent decree, which Honeywell was obligated to follow. Put simply, the residents' perimeter air monitoring system allegations also are undisguised attacks on the consent decree's terms. Thus, CERCLA preempts many of the Amended Complaint's allegations because they transparently attack – on the basis of state tort law – the consent decree itself, and not its implementation.

Whether two other categories of the residents' allegations are preempted, however, is a closer call. Specifically, the residents allege that Honeywell: (1) after the 2012 dredging shutdown, violated the consent decree by not implementing certain measures to cover the geotubes; and (2) before commencing dredging, was negligent in not conducting additional bench-scale tests of the emissions implications of using geotubes rather than open basins for sediment dewatering. Although the district court did not directly address these allegations in its opinion below, we nonetheless conclude that, from the face of the Amended Complaint and the seven volumes of appendices attached to it, these allegations also are preempted by CERCLA.

11

Taking these assertions in turn, the residents' claim that Honeywell ran afoul of state tort law (and violated the consent decree) by not covering some of the geotubes is implausible. Indeed, documents attached to the Amended Complaint – and fatal to this claim's plausibility – plainly reveal that (a) multiple state and federal expert supervising government agencies acting within their statutory authority, and (b) the federal district court overseeing the consent decree's implementation, have extensively supervised Honeywell's conduct and determined that Honeywell complied fully with its responsibilities under CERCLA and the consent decree. *See, e.g.*, *id.* at 269, 274–81, 284–86, 288, 294–301, 306–08 (consent decree mandating that the DEC oversee the implementation of the CERCLA remedy, imposing vast monitoring requirements on various state and federal expert government agencies, and vesting the district court with continuing jurisdiction to enforce and interpret the consent decree); *id.* at 288 (requiring that Honeywell provide the DEC with on-site office space); *id.* at 831, 840, 857–67, 889 (describing, in painstaking detail, certain of the extensive, real-time air monitoring systems in place and obliging Honeywell to relay various daily, monthly, and quarterly submissions to state and federal expert government agencies); *id.* at 1045 n.1 (June 25, 2014 letter from the EPA representing that "[f]rom the onset, the New York State Department of Health has . . . been very involved in the Onondaga Lake project and works closely with NYSDEC and the EPA on all human health-related matters pertaining to the project"); *id.* at 1046 (June 25, 2014 letter from the EPA affirming that "[d]uring the period of dredging operations, there has been no evidence of adverse impacts to human health" and "the project is being implemented in a manner which is fully protective of public health"); *id.* (June 25, 2014 letter from the EPA quoting the conclusion of the federal district court overseeing the consent decree's implementation that "pursuant to the Court's oversight responsibility with

12

regard to the implementation of the Consent Decree, . . . the Court [after inquiring of multiple experts] . . . is satisfied that the methods and procedures that [Honeywell] is employing in the cleanup present no health risks to the surrounding communities" (internal quotation marks omitted) (first ellipses in original)).

As for the residents' state law claims arising from Honeywell's purported negligence in failing to conduct additional bench-scale tests assessing the prudence of using geotubes rather than open basins for sediment dewatering, we conclude that subjecting Honeywell to potential state tort law liability for this alleged conduct would pose an obstacle to the accomplishment and execution of Congress's full purposes and objectives. *Cf. New Mexico v. Gen. Elec. Co.*, 467 F.3d 1223, 1249–50 (10th Cir. 2006) ("Any relief provided the State would substitute a federal court's judgment for the authorized judgment of . . . [the expert government agencies] that the cleanup is not only comprehensive but flexible and dynamic, readily adjusting as new data is received."). In the particular circumstances of this appeal (demonstrated in the voluminous attachments to the Amended Complaint) – *i.e.*, the meticulously negotiated remediation of the Onondaga Lake Superfund site which was the product of approximately two decades of legal and technical efforts, including public notice and comment and extensive supervision by a federal court and state and federal expert agencies – CERCLA preempts the residents' attempts to impose state tort law liability on Honeywell for not going above and beyond a testing regime which the EPA itself described as "extensive." J.A. 637; *see also id.* (EPA explaining that "the local community raised concerns pertaining to potential odor generation using th[e] dewatering method[,]" and "[i]n response to these community concerns, an extensive evaluation comparing the geotextile tube and settling basin dewatering methods based on 10 site-specific dewatering objectives was

13

conducted . . . . Based on this evaluation, it was determined that there are many site-specific benefits of using geotextile tubes as compared to settling basins[]"); *id.* at 637–38 (listing several site-specific benefits of using geotubes rather than open basins for sediment dewatering).

## III. LEAVE TO AMEND

We review a district court's determination to deny a party leave to amend its complaint for abuse of discretion. *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Below, the residents cursorily, at the end of their opposition brief, requested leave to amend their Amended Complaint. The district court denied the request, noting "[t]o the extent that Plaintiffs intended this discussion to serve as a motion for leave to amend their amended complaint, it does not comply with this [c]ourt's Local Rules regarding such motions; and, therefore, the [c]ourt will not consider it." *Bartlett v. Honeywell Int'l, Inc.*, 260 F. Supp. 3d 231, 246 n.7 (N.D.N.Y. 2017) (citing NDNY Local Rule 7.l(a)(4)). Likewise, on appeal, the residents again throw in a perfunctory request for leave to amend, raised in their opening brief solely as their twentieth question presented but with no argument explaining why the district court erred, how any amendment would cure the Amended Complaint's deficiencies, and without citation to any authority. Although they make a faint attempt to support this contention in their reply brief, the residents' half-hearted efforts constitute abandonment of any request on appeal for leave to amend. *See* Fed. R. App. P. 28(a)(8)(A); *Diesel v. Town of Lewisboro*, 232 F.3d 92, 110 (2d Cir. 2000). And, in any event, the residents never submitted a proposed amended pleading nor did they indicate how any amendment would cure the Amended Complaint's shortcomings. We thus conclude that the district court did not abuse its discretion in rejecting the residents' fleeting

14

request for leave to amend.  *See, e.g.*, *Metz v. U.S. Life Ins. Co. in City of N.Y.*, 662 F.3d 600, 603 (2d Cir. 2011) (per curiam).

***

We have considered all of the residents' remaining arguments and find them to be without merit.   Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court